(75 App. Div. 539.)

## JONES v. LEVERING et al.

(Supreme Court, Appellate Division, First Department.   November 7, 1902.)

1. FRAUD—WAIVER.

Materialmen who, with knowledge of a defense of fraud to a mortgage, enter into an executory contract with the mortgagee, for protection of their interests, by which the mortgage is to be paid in full, cannot, in an action based on the contract, raise the question of such fraud.

2. CONTRACTS—CONSTRUCTION.

J., holding second mortgages on land on which buildings had been partly erected, entered into an agreement with materialmen, having claims against it that he should foreclose and bid in the property, and immediately thereafter execute a deed to P., on the understanding and agreement that, before the delivery of the deed, a mortgage should be negotiated on the premises, when completed, for $250,000, which should be applied to the liens prior to J.'s, and then on J.'s judgment and mortgages so far as it would go; he to take a second mortgage, if necessary, for the balance coming to him.   The contract then appointed P. trustee for the materialmen, to act as their trustee in receiving the deed from J., to take possession of the buildings and see that they were immediately pushed towards completion, and to procure permanent mortgages thereon; to pay off the prior mortgages, to rent the building and collect the rents, and to sell the premises.   It was then provided that P. was to negotiate a first mortgage of $250,000 on the buildings, or a larger one if possible, and, if possible, a second mortgage of $40,000, and out of the proceeds pay the mortgages; but, if it was not possible to negotiate the second mortgage of $40,000, he should execute a mortgage for the deficiency due J., and, if the second mortgage should be obtained, the proceeds should be divided pro rata among the creditors.   P. was then authorized to sell the premises for not less than enough to pay the claims.   The materialmen agreed to complete the building, which they did.   *Held*, that the delivery of the deed by J. to P. was on condition of his obtaining a mortgage of $250,000, and that until he did so he was not entitled to possession or control, except to see that the buildings were completed; and that he not having been able to obtain one, and J. having obtained one of $200,000 with consent of the materialmen, all they were entitled to was a sale of the premises, and to any proceeds after payment of J.'s claims.

3. QUIETING TITLE—COSTS.

Plaintiff having brought suit to remove a cloud on his title, consisting of a certain contract, and defendants having an equity by reason of which there was judgment that the property be sold, and any proceeds above plaintiff's claim be applied to defendants' claims, costs should not be awarded to either party.

Appeal from special term, New York county.

Action by Louis M. Jones against William M. Levering and others.   From an interlocutory judgment entered on a trial without a jury, defendants appeal.   Modified.

The following is the contract, the subject of the action.

"Agreement made and entered into this 15th day of November, in the year 1897, between the undersigned, in consideration of the mutual covenants and agreements hereinafter set out, and of the sum of one dollar by each to the other in hand paid.

"(1) Louis M. Jones, being the holder of three several mortgages upon and against the premises in the seventh paragraph of this agreement more particularly specified, to wit, a mortgage for $75,000, a mortgage for $50,000, and a mortgage for $42,500, with accrued interest, upon which said mortgages two foreclosure suits have been begun, agrees, on his part, that he will con-

tinue and press said foreclosure actions to judgment and sale with all convenient speed, and that if a sufficient sum is not bid upon said sale to pay the amount of the foreclosure judgment and interest, and the costs of such sale, he will bid the property in, and take title thereto, and will immediately thereafter make, execute, and deliver a good and proper deed of the same to Melvin G. Palliser individually, upon the understanding and agreement that, before the delivery of said deed, a bond and mortgage shall have been negotiated upon the said premises, when completed, for the sum of $250,000, which sum, less the expenses of procuring the same, shall be paid over and applied to pay off the liens upon said property prior to those of said Jones, and then upon the judgments and mortgages of the said Jones as far as the same will go, and that he will, if necessary, as hereinafter set out, accept a second mortgage upon and against said premises for the difference coming to him, payable on or before six months after date, with interest.

"(2) Melvin G. Palliser, of Dobbs Ferry, New York, is hereby nominated and appointed by William M. Levering and William A. Garrigues, composing the firm of Levering & Garrigues; Anna B. Lee and Edward P. Burwell, composing the firm of Lee & Burwell; The Electric Construction and Supply Company; The Springfield Elevator and Pump Company; Catherine Reilly and William McLaren, composing the firm of Reilly & McLaren; L. G. Kirk; and F. T. Camp, architect,—to act as their trustee in the reception from said Louis M. Jones of a deed of the premises hereinafter described, to take possession of the buildings erected, and to see that the same are immediately pushed toward a completion, and to procure permanent mortgages upon and against the same; to pay off the first, second, third, and fourth mortgages thereon; to rent the said buildings, and to collect the rents of the same; to contract for and to sell the same; and to do any and all other act or acts in and about the premises necessary for our protection, and for the completion of the buildings, and the renting, mortgaging, and sale of the same. And the said Melvin G. Palliser agrees that he will act as trustee as aforesaid, and will exercise and use his best skill and diligence in the consummation of the same, and will execute a declaration of trust accordingly upon taking title as above.

"(3) The firm of Lee & Burwell, above described, the Springfield Elevator and Pump Company, The Electric Construction and Supply Company, L. G. Kirk, Levering & Garrigues, and Reilly & McLaren agree on their part that, immediately upon a default being made in the foreclosure suits of said Louis M. Jones, they will enter into and upon the work of furnishing the materials heretofore contracted to be furnished to the said buildings by them respectively, with Henry S. Wood, and that they will promptly and with all diligence continue their said contract, and finish and complete the same in accordance with the plans and specifications and under the superintendence of the said F. T. Camp, who is continued as architect for the same: it being understood that there shall be advanced to the said L. G. Kirk, to enable him to complete, the sum of $1,000, and to the Springfield Elevator and Pump Company a like sum of $1,000.

"(4) Said Melvin G. Palliser is to negotiate a first permanent mortgage upon and against said building of $250,000 at 4½%, or a larger sum if practicable, and, if possible, is to negotiate a second mortgage upon and against the same of $40,000, and that out of the proceeds derived by him from said mortgages he is to pay off the taxes upon and against said property, the mortgage of the United States Trust Company of New York, and all accrued interest, and the several mortgages of the said Louis M. Jones in their order of priority, with the interest and cost of the foreclosure so far as the same may go, and, should it become impossible or impracticable to obtain a second mortgage of $40,000, then he is to execute a mortgage for the deficiency to the said Louis M. Jones; said deficiency covering any additional sums which the said Louis M. Jones may be obliged to advance to the said Palliser to carry out the terms and intentions of this agreement. Should such second mortgage be obtained, then the proceeds thereof, after the payment of taxes and the first four mortgages and interest and costs, are to be divided pro rata in accordance with the amount of the liens of the respective creditors, without reference to the priority of liens.

78 N.Y.S.—26

"(6) The undersigned creditors specified upon the schedule hereto annexed, hereby agree, each for himself with each of the other creditors, parties to this agreement, that he will truly substantially perform and complete the work remaining unfinished upon the contract or contracts heretofore made with H. S. Wood or otherwise, and furnish all materials connected therewith, and be out of the building on or before the day specified in said schedule opposite each respective name. This provision being of the essence of this contract, it is further agreed that, upon failure of any one of the contracting parties to finish and complete his work as aforesaid, he shall thereupon forfeit all right, title, and interest under this agreement.

"(7) The claims of the respective cestuis que trust named in this agreement, upon completion of their respective contracts, are hereby settled and adjusted at the following amounts, viz.:

| Names of Creditors. | Amount of Claim on Completion. | Time of Completion of Contract. |
|---|---|---|
| Levering & Garrigues | $18,326 36 | January 1, 1898. |
| Lee & Burwell | 20,515 00 | December 15, 1897. |
| The Springfield Elevator & Pump Company. | | |
| Reilly & McLaren | 2,650 00 | December 1, 1897. |
| L. G. Kirk | 3,536 00 | January 1, 1898. |
| F. T. Camp | 1,775 00 | January 1, 1898. |

"Louis M. Jones further agrees that the mason and plumbing work will be finished according to contract on or before the first day of January, 1898.

"(8) The property covered by this agreement is bounded and described as follows, to wit: Beginning at a point on the southerly side of Bleecker street distant one hundred and fifty feet easterly from the easterly side of Wooster street, and running thence southerly, and parallel with Wooster street, one hundred feet; thence westerly, and parallel with Bleecker street, seventy-five feet; thence northerly, and parallel with Wooster street, one hundred feet, to the southerly side of Bleecker; and thence easterly, along the southerly side of Bleecker street, seventy-five feet, to the point or place of beginning, be the said several dimensions and distances more or less; subject to party walls, if any; said premises lying in section 2, block number 524, on the land map of the city of New York; being the same premises which were conveyed to the said Henry S. Wood by the said Louis M. Jones and wife by deed delivered and recorded.

"(9) Lee & Burwell further agree with each of the undersigned that they will commence work to complete their contract on said building on the 16th day of November, 1897, and will deliver to the trustee the material already on hand to complete said work.

"(10) The trustee is authorized to sell said premises for the best price obtainable, but not for a sum which shall be less than sufficient to pay the claims of the creditors, parties to this agreement, in full. In the event of a sale for a larger sum than as above specified, the trustee shall pay as counsel fees to Kurzman & Frankenheimer, $2,000, to Stedman & Larkin, $2,000, to Hector M. Hitchings, $2,000, and to Melvin G. Palliser, $1,500, in full of all claims for commissions as trustee; and balance shall be divided pro rata among the creditors, parties to this agreement, as profits.

"(11) Each of the parties to this agreement having mortgages, liens, conditional bills of sale, or special contracts in reference to the work on this building, hereby waive any special provisions and liens, and rely for their security upon the provisions of this agreement so long as the agreement is operative and binding.

"In witness whereof, we have hereunto set our respective names and seals, this fifteenth day of November, 1897.

"This contract becomes binding and operative only upon the execution of this contract by each of the parties thereto."

Argued before VAN BRUNT, P. J., and HATCH, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

A. B. Prentice, for appellant Kirk.

Hector M. Hitchings, for other appellants.

J. Frankenheimer, for respondent.

HATCH, J.   The plaintiff brings this action for the purpose of removing a cloud upon his title to certain real estate.

The complaint is based upon a contract entered into between the plaintiff and the defendants, and the claim of the plaintiff is that such contract constitutes a cloud upon the title, that the defendants are not entitled to enforce the same, and, therefore, it should be removed as an incumbrance.   There does not seem to be any dispute but that the contract, as it exists, constitutes the same a cloud upon the title, and, therefore, the plaintiff becomes entitled to enforce its provisions.

The execution of the contract arose out of the following facts :. The plaintiff, being the owner of the premises, contracted to sell the same to one Henry S. Wood for the agreed price of $165,000, to be paid by Wood's assumption of a mortgage upon the premises of $90,000, and the execution to the plaintiff of a purchase-money mortgage of $75,000.   No money consideration passed from Wood to the plaintiff for the purchase price of the premises.   By the terms of the contract, Wood agreed to immediately begin the construction, upon said premises, of two eight-story buildings, and plaintiff was to loan and advance to Wood, as the buildings progressed, $50,000, which was to be secured by a building-loan mortgage.   Wood was a man of no means, and became financially embarrassed as the work proceeded.   He was only able to continue the work as money was advanced by the plaintiff.   The $50,000 proving insufficient for the erection of the buildings, and Wood having no money, the plaintiff procured to be. executed, by Wood, a second building-loan mortgage, running to the plaintiff, of $42,500.   In erecting the buildings, Wood entered into contracts with the defendants to furnish material, and perform work, labor, and services in and about the construction of the buildings, and incurred an indebtedness therefor, which furnished the consideration, in part, for the execution of the contract, the subject of this action.   The performance of the contract of sale by Wood proceeded to a point where he became hopelessly involved, and unable to pay the materialmen, or proceed further with the construction of the buildings.   Thereupon the plaintiff commenced an action for the foreclosure of the two building-loan mortgages executed by Wood.   In this action, all of the defendants were made parties, but some had not been served with process prior to the execution of the contract, the subject of the action.   It was the contention of the defendants at this time that certain of their claims were superior to the lien of the two mortgages, and should be paid in preference thereto ; that they also had a defense upon the merits, based upon the claim, that the full amount of money secured to be paid by the mortgages had not been advanced by the plaintiff to Wood, but that the plaintiff had appropriated to himself a very large sum of money, the proceeds of the mortgages, and that his son, with the consent of the plaintiff, had profited in an unconscionable amount in the contract which he made with Wood for doing the mason work upon the buildings; that the sums secured thereby by the plaintiff and his son should be deducted from the amount of the building-loan mortgages, and paid to the defendants upon their several claims.

Some of the materialmen, if not all, employed counsel to protect their rights in the premises. After these claims had been advanced, negotiations were had between the parties and the counsel representing the respective interests, and such negotiations finally resulted in the making and execution of the contract, the subject of the action.

No answers were interposed by the defendants or any of them in the foreclosure action. In the answers which have been interposed in this action, it is set forth that Wood was the mere dummy of Jones, and, in substance, that the transaction between Jones and Wood was a scheme upon the part of Jones to defraud the materialmen who should be engaged in constructing these buildings, and that pursuant thereto Jones appropriated a large part of the proceeds of the building-loan mortgages, and through the contract with his son, adverted to above, and in other matters, he fraudulently procured for himself, at the expense of these defendants, considerable sums of money, which now ought to be applied in payment of these defendants' claims.

A perusal of the testimony discloses much in justification and support of the claims set forth by the defendants in their answers and otherwise. It is not, however, averred, in any of the answers interposed by the defendants, that they were without knowledge of the existence of these fraudulent acts on the part of Jones; on the contrary, the evidence discloses the fact that the defendants did have knowledge of the act of Jones in appropriating money, and of the contract for the mason work secured by his son. It must be assumed, therefore, for all the purposes of this action, that these defendants were informed of existing conditions at the time of the negotiations which led to the execution of the contract, the subject of the action. Such being the fact, and as they and each of them consented and agreed that Jones should be permitted to continue the foreclosure of the mortgages for the full amount for which they stood as security, and that the defendants were to be paid the amount of their claims by the proceeds of a mortgage or from the proceeds of the sale of the property, subject to the amount of the mortgages, and of the amount of Jones' advances otherwise made upon the property, they must be held to be concluded by such agreement, and cannot now attack the transaction between Jones and Wood, or have the settlement relating thereto disturbed.

The effect of the execution of the agreement was to substitute an independent executory contract for the protection of the defendants, and to settle the matters in difference; and, as such, it became binding upon the parties thereto, and resort can only be had to it in the enforcement of the respective rights and liabilities of the parties. Morehouse v. Bank, 98 N. Y. 503; Nassoiy v. Tomlinson, 148 N. Y. 326, 42 N. E. 715, 51 Am. St. Rep. 695.

This brings us to a consideration of the construction to be placed upon the contract. It recites the mortgages given by Wood and held by Jones, and provides that Jones should press the foreclosure actions to judgment and sale, and bid in the property if upon such sale an amount to pay the judgment, interest, and costs was not bid, and take title thereto, and should immediately thereafter execute

and deliver a good and proper deed of the same to Melvin G. Palliser—

"Upon the understanding and agreement that, before the delivery of said deed, a bond and mortgage shall have been negotiated upon the said premises, when completed, for the sum of $250,000, which sum, less the expenses of procuring the same, shall be paid over and applied to pay off the liens upon said property prior to those of said Jones, and then upon the judgment and mortgages of the said Jones as far as the same will go; and that he will, if necessary, as hereinafter set out, accept a second mortgage upon and against said premises for the difference coming to him, payable on or before six months after date, with interest."

The second clause of the contract appoints Melvin G. Palliser as trustee of the defendants, and defines what he shall do in these words:

"To act as their trustee in the reception from said Louis M. Jones of a deed of the premises hereinafter described, to take possession of the buildings erected, and to see that the same are immediately pushed toward a completion, and to procure permanent mortgages upon and against the same; to pay off the first, second, third, and fourth mortgages thereon; to rent the said buildings and to collect the rents of the same; to contract for and to sell the same; and to do any and all other act or acts in and about the premises necessary for our protection, and for the completion of the buildings, and the renting, mortgaging, and sale of the same."

By the fourth clause of the agreement, Palliser was to negotiate a permanent first mortgage upon the buildings, of $250,000, at 4½ per cent., or a larger sum if practicable, and, if possible, to negotiate a second mortgage for $40,000, and out of the proceeds to pay the taxes, the mortgage to the United States Trust Company, and interest, the several mortgages of Jones in their order of priority, with interest, and the costs of the foreclosure so far as the same might go; if it was impracticable to secure the second mortgage of $40,000, he was to execute a mortgage for the deficiency due to Jones, and for any sums which Jones might thereafter advance to carry out the intention of the agreement. Should the mortgage of $40,000 be obtained, the proceeds thereof, after the costs, to be divided pro rata among the respective creditors, without reference to priority of liens. By the tenth clause, the trustee was authorized to sell the premises for the best price obtainable, but not less than a sum sufficient to pay the claims of the creditors, parties to the agreement, in full, and, if for a larger sum, then certain other persons to be paid specified sums. The defendants upon their part promised and agreed to furnish materials and complete the buildings. It is conceded that they fulfilled the terms of the contract in this respect.

It is apparent from the first and second clauses of the contract that the execution and delivery of the deed by Jones to Palliser was made dependent upon his procurement of a mortgage for $250,000. Such is the express statement in the first clause of the agreement, and the possession of the property provided for in the second clause, by Palliser as trustee, was dependent upon the fulfillment of the obligation assumed in the first clause. The language of the second clause is, "to act as their trustee in the reception from said Louis M. Jones of a deed," then to take possession, etc. There was, therefore, no right, either to the deed, or to the possession of the premises, by

Palliser unless he procured the $250,000 mortgage. Until he fulfilled in this respect, he was not entitled to exercise any act of dominion or control over the premises, except to see that they were completed. He was not authorized to rent, or sell, or do any other act in control of the premises, until he fulfilled his contract by procuring a mortgage, when he would be immediately entitled to a deed and the possession and control of the same. It is quite true that he was entitled to a reasonable time after the completion of the building in which to perform his contract in this respect, but, until he did perform it, he was not entitled to the deed or the possession. In this connection Jones was not required to do anything. He had not contracted that the buildings, before or after completion, should be in any particular condition for rent or otherwise. He contracted to bid in the premises at the sale unless sufficient was bid by other parties to pay the mortgages and costs. He did not contract to do anything else except to deliver the deed and possession when Palliser procured the mortgage. Consequently, Jones was guilty of no breach of his contract in failing to execute and deliver the deed to Palliser, or to allow the latter to take charge of the building, and rent or sell the same. Both acts were conditioned upon Palliser's act in procuring the mortgage. Undoubtedly Jones could not interfere so as to prevent Palliser from the fulfillment of the contract upon his part, and, if he did, he would then be guilty of a breach of its terms; but his mere refusal to deliver the deed, or to permit Palliser to take possession of the buildings, or to put the same into condition more attractive for rent, did not operate as breaches of the contract, because no obligation was imposed thereby that he should do those things. It is conceded that Palliser did not procure a mortgage for $250,000, and that he was unable to obtain one for that amount or that he ever obtained such mortgage or could obtain it. The claim that he was excused therefrom because opportunity was not given him to rent the premises after completion, and thus furnish a basis for the loan of $250,000, was unavailing, as Jones had not agreed to create such a condition, or permit Palliser to create it. When Palliser found himself unable to obtain the loan of $250,000, he negotiated, by himself and his attorney, with the plaintiff, to secure a modification of the contract, in this respect, which would permit of a loan to be obtained for $200,000 instead of $250,000. It is clear that Jones was not obliged to accept this modification, nor does it appear that he did so; neither did he object, but stated that he would see what he could do. The most favorable light which the defendants can claim is that he stated that he would look after it, and to leave the matter in his hands; and it was so left by the consent of Palliser. The latter says that he took no steps after January to secure the loan, and that he knew that Jones was trying to obtain it, and that he did not object. The matter therefore resolved itself into a condition where the defendants had requested of Jones that he accept a mortgage of $200,-000; that $250,000 could not be obtained; and that Jones, with the consent of the defendants, procured a loan of $200,000 as the defendants desired. It is clear, therefore, that Palliser did not fulfill his contract, and that Jones procured a mortgage for the amount which the

defendants had requested that they be permitted to do in fulfillment of the contract. To this extent, it may be said that there was a modification of its terms, but it cannot be said that it constituted a breach of the agreement upon the part of Jones. Under these circumstances, what were the rights of the parties? Jones held the legal title to the property, and at least occupied the position of a mortgagee in possession and as such entitled to be paid. Sahler v. Signer, 44 Barb. 606; Phyfe v. Riley, 15 Wend. 248, 30 Am. Dec. 55. He had not agreed to deliver a deed or the possession of the property except upon a certain contingency. Out of the proceeds of the mortgage which was expected to be obtained there was nothing which would be paid to the defendants, and it is clear that nothing could be realized for them upon a mortgage of $200,000. Their security for payment, as provided in the contract, was to come from a second mortgage of $40,000, or from a sale of the premises. Such is the express provision of the fourth and tenth clauses of the agreement. It does not appear that there has ever been any attempt by anybody to procure a second mortgage, while the judgment which has been rendered directs a sale of the premises. It is evident that the primary security for the payment of all of the parties—Jones and the creditors—was the property. Jones was to be first paid, and nothing which he has done deprives him of this right. The failure to secure the mortgage for $250,000 placed him in a position where there was insufficient to discharge the mortgages and other claims which he held. As he was under no obligation to deed the premises except the mortgage was secured, so he was under no obligation to convey, under the modification as carried out, unless he was as fully protected as he would have been had the contract been fulfilled. Consequently, as the situation of the parties had been changed by reason of the failure of Palliser to procure the mortgage for $250,000, Jones was under no obligation to convey or surrender possession, unless he was secured in the application of the proceeds of the property to the payment of his claims, as they were prior to any rights possessed by the defendants.

Up to this time, Jones has taken no steps which cut off the rights of the defendants in and to this property, nor have the defendants placed Jones in default by tendering performance. As the agreement has only been partially executed, and modified in other respects, neither party would seem to be entitled to a strict fulfillment of its conditions. Each party has equitable interests in the property. The value of such interests depends upon the amount which the property can be made to realize on a sale, and we see no other way in which the rights of all the parties can be equitably adjusted except by a sale of the property and a distribution of the proceeds according to the priority of the respective rights. This is what the judgment accomplishes. It may be true that the defendants will not be benefited by such disposition of the case. This is not due, however, to the inequitable character of the judgment, but is due either to the insufficiency in value of the property to discharge all the claims, or to the inability of the defendants to protect their interests upon a sale. There is no authority in the court, however, to grant

other relief in this respect. In view, however, of the conceded equities possessed by the defendants in this property, we do not think that costs of this action should have been awarded in favor of the plaintiff, but that, under the circumstances, costs should not have been awarded in favor of either party. It follows that the judgment should be modified by striking out the awards of costs to the plaintiff, and, as modified, the judgment should be affirmed, without costs of this appeal to either party. All concur.